410-05, people v. Antonio Sullivan, for the appellant is Michael Delcomen, for the appellee is Luke McNeil. Mr. Delcomen, you're up, sir. Thank you, Your Honor. Good morning, Your Honors. Good morning. My name is Michael Delcomen. I represent Antonio Sullivan. I'm the appellee of the court. Counsel? Counsel. My argument today is that Antonio Sullivan should receive either a new trial or an evidentiary hearing, both on the grounds of juror bias. I'm going to address each of the two arguments in turn in that order. First, the request for a new trial. I think most of these cases start with what's in dispute, and everything's always in dispute. So let's talk first about what I think at least is not in dispute. Arguably, or not arguably, holding a defendant's ability to testify against them constitutes juror bias. Juror bias is a structural error. Structural errors require automatic remand, and there's at least some evidence of juror bias in this case. Now, the devil, as they say, is in the details, and we'll talk more about that evidence, I'm sure, in a little bit. But I think just big picture, at least, those points are generally undisputed, at least, you know, between the statement. If you can correct me in a few minutes if I'm wrong. What if the jurors had overlooked element three of a four-element issues instruction and found the defendant guilty? And we get an affidavit that says, we never even talked about number three. Would that be juror bias? So like the elements for one of the charged offenses? Yes. As soon as the guy's on trial for an offense and there are four elements that the issues instruction make clear, the jury has to find the unreasonable doubt. And we have an affidavit that says, you know, we never talked about issue number three, proposition three, at all. And is that juror bias? It's a bad day for the defendant, but I'm not sure that it's juror bias. Why not? I think that is a lot closer to method, motive, or process. I think that goes to what these cases generally speak of in that, you know, what happens in the deliberation room stays in the deliberation room. What if the defendant is a farmer and one of the jurors says, I have a lot of experience with farmers. They're pretty slick. Is that juror bias? I think you're getting closer to juror bias than that. How close am I? Well, what's the, is there an affidavit in that, in your example? Oh, sure. Oh, yeah. And you know, this guy said these farmers are pretty slick. You got to watch him. And of course, the guy, he and some other farmers testified on behalf of the defendant. Is that bias? So that we now just undo the case? Well, I'm not quite sure I'm following you. Did the juror write an affidavit and say, I hold the fact that he was a farmer against him? Does it matter if it were reported that this is what was said in the jury room? I think it does matter. I think that you're, in that farmer example, if that juror said, well, it would also depend on what he said in the affidavit. If he just says, I think they're kind of slick, then no, I don't think so. That goes to method mode of the process. If he said, well, I think it reminded me why I don't believe farmers. That's what the affidavit said. I think you can certainly make an argument with that. And he admits to that in his post-trials. Yeah. There's no dispute that that was said during the jury deliberations. Dan, I think you're a lot closer to jury bias there than you are in your first example. And I think the cases would actually probably call that juror partiality rather than juror bias. And I think there's some... How about someone says, you know, there's proof you have a reason about stuff that's just lawyer talk. The guy didn't do it, he wouldn't have been arrested. Is that juror bias? That's one of the 431B principles, I'd say, certainly. Because the Supreme Court has talked about juror bias just in those four examples specifically. So I would say any one of those four, or any one of those four propositions in law. So I would say any one of those four that the jurors have actively ignored or gone against would constitute juror bias. So I think this conversation kind of gets to NITS and the Supreme Court case NITS, in which the court held, the same as it's always held in this area, which is generally when we get these letters or affidavits from jurors after trial, we're just going to... And once the case is finished, the case is finished. NITS also talks about juror bias in terms... And while they don't specifically address this same allegation, but the same allegation as we have in this case was present in the NITS case. So they discuss juror bias, but they discuss it in sort of broad terms. And they don't discuss it in terms of structural error. So is NITS controlling? Arguably on its face. But I don't think it... I don't think that it answers this question. Because if we agree that holding a defense failure to testify against it is a structural error, I think it's pretty difficult to say, well, we agree that this is a fundamental right. You have a fundamental right to a trial before an unbiased jury, but we're going to ignore it as part of the method, motive, or process. If this information came to light during the course of a trial, I think a trial judge would certainly speak to the juror. I mean, there are a lot of cases on this, not on this particular allocation, but on these kinds of things, alleged juror bias during the course of a trial. And they usually would speak to the juror. In order to agree with your argument, wouldn't we have to conclude that the Glassburn-Thompson case is dealing with Rule 431 overruled NITS? You might, and I think that's why I've argued it for an alternative, which is for an evidentiary hearing. The 2006 case seems to say, directly at this point, we're not going to get into jury discussions. That's true, but it also doesn't address whether this fundamental right to an unbiased jury and whether it's a structural error or not. I mean, I think that, again, if this Court agrees that it's a structural error, then there's still that hole in NITS. Now, I don't think you can say that Glassburn-Thompson overruled it, because the statements that I've quoted from Glassburn-Thompson are dicta, so if they overrule by implication, I don't know. Well, how about, you know, when you talk about structural error, what about juror confusion? Affidavit saying, gee, I misunderstood. Not juror bias. That's methodological processing. Because I think that's what they're, you don't have a fundamental right to a jury that's clear on every issue in the case. So the juror who says, I just misunderstood the evidence in the race, thinking about it, I had it confused, and said, what about what? That's okay, but the guy who says these farmers are slick, we've got to give them a new trial? Farmers are slick, I don't believe them? If he says I didn't believe the defendant in this case because he was a farmer, then my answer is yes. Now, is that fair? I don't know, but based on the state of the law, that's what the law says. Has any case yet so held in Illinois? What I'm asking for? Yes. For a new trial? No. So we'd be the first to say that Thompson and Glasper trump Mitts? Well, I don't think, that's what I was saying, I was trying to make the point earlier, I don't think you would have to say that, because, again, the statements in, it would at best be overruled by implication. And I don't know that that's even, I would say that that's even a stretch, because those statements are dicta. But it's a difficult question, because there's still this hole in Mitts where they don't address this fundamental right. Now, those cases did come after Mitts, and I think that they might decide this kind of an issue differently in light of Thompson and Glasper. But legally, whether this court can say, we have no question that these cases have overruled Mitts, I would say no. But, then let's move on to the next argument, which is for an evidentiary hearing. There is case law that's right on point for an evidentiary hearing. And I think that this issue would address, or this remedy would address a lot of this court's concerns. Kuntu, for example, says, I'll read you the quote, where a defendant does not learn a fact which might support a finding of partiality by a juror until after a verdict, a post-trial evidentiary hearing may be necessary. That seems pretty clear to me. And, further, if... That's a fact. That's a fact, as opposed to just an affidavit saying I would have done it differently. If you discover a fact saying that, like, the juror is related to the opposing counsel or something like that that was concealed, that's a provable, objective fact. But that's not what we have here. Well, I'm not... You mentioned that he had a change of mind. I'm not arguing that my client should get a new trial because this juror had a change of heart. That's not the basis of my argument. 99% of what he said in that letter is methodological process. I don't dispute that, and that was properly ignored by the trial court. It's just this one short section that discusses the other jurors holding the defendant's ability to testify against him. So if the affidavit says I held it against the juror or against the defendant, no problem. But if the juror's affidavit says the other jurors held it against him, then that is a problem. I'm not quite sure. I think they're both a problem. I think it's easier to give him a new trial or an evidentiary hearing if you have an admission, because then there's no question that that's what happened. Here, part of the issue that the state took with this evidence was the state referred to it as being conjectural. And I think that means that the juror who wrote the letter, that's his interpretation. Now, I think he was pretty clear, and he said that the other jurors said they were holding it against him. But I think that, in turn, leads to why an evidentiary hearing is appropriate in this case. But you used the term when you quoted from the case, fact. And it seems to me there's a difference between an objective, provable fact and the affidavits we have here. Well, I think that what you're looking for, though, ultimately, is not we don't need a piece of, I mean, you can come to the letter to the state's attorney or the job application, and one of those in wit. But I don't think that what the court is trying to figure out was whether that document ultimately shows that that juror was partial or biased. And that's what the evidentiary hearing is used for. That's the ultimate fact at issue, and I think that there's... You seem to ignore the difference between objective facts and subjective facts. In the example I gave you, the juror is related to the prosecutor. For another objective fact, the juror received a check for $1,000 from the prosecutor a week before the trial. Those are objective facts. When the juror says, gee, I think we would have, you know, we reached this verdict because a lot of us ignored the fact that we weren't supposed to consider that it was fair to testify. You know, that's a subjective fact. That job application alone is not what is getting that defendant a new trial in that case. The letter to the state's attorney in Kuntu is not getting that defendant a new trial. What's getting him a new trial is if that letter shows after an evidentiary hearing that that juror was biased, which is his subject is more, is closer to what we have here, which is a subjective feeling that he had during the course of the case. If they thought that that letter was enough to give him a new trial, they wouldn't have reversed for an evidentiary hearing. They would have reversed and given him a new trial. So I don't think that that fact, I agree with you. I see what you mean about that, that, you know, there is a difference between, you know, that letter maybe and what we have here. But the question is, what does that show? Not what's on its face, because if it was what's on its face showed bias, then he would have had a new trial. I mean, there would be no reason to have an evidentiary hearing, right? Because in that case, they had the letter. But the question was, does that letter, it indicates a relationship, but what did that relationship mean to that juror? The Supreme Court in that case thought that that relationship might mean, or that letter, which shows a relationship, at least indicates a relationship, might mean that juror was biased. The whole suggestion you're making here, it seems to me, really causes great problems in the law. What defense counsel needs to do is not prepare for his case. He needs to interview all the jurors after the case and talk somebody into mailing in an affidavit, which it just strikes me as a horrible result. Well, I think if that were the result, I would not hesitate to agree with you. That would be a horrible result. Why wouldn't that be where we would be going if we were to agree with the argument? Well, for one main reason, and that main reason is right now the rule against considering post-trial communications from jurors is not ironclad. It doesn't say every single thing that comes from jurors we can't consider. The exception is external influences, external evidence, things that the jurors consider. They will almost always look at that. You're free to consider that. So if that's open right now, especially in today's age, when jurors can, they have smartphones, social media, you can have push updates sent to your telephone, you can check, you essentially have the Internet in your pocket, I think it's a valid concern amongst trial courts that juries are going to be looking at external evidence or extrinsic evidence in cases. I haven't seen any indication that defense attorneys are sort of mining these jurors for this information after trial, and that's readily... Because the rules are limited currently to extrinsic matters. A ruling in your favor would change that dramatically to get into what they were thinking. Except that that's my next point, actually, that it's not, it doesn't change the general method, mode, or process, because I think that this is, I'm having a hard time describing, but it's almost in a different category than method, mode, or process. At the moment, the inquiry might be limited to, did something happen besides what occurred in the jury room? Because what happened in the jury room, under the law, wouldn't be a subject of usefulness to the defense counsel whose client was convicted. Were you told something by the bailiff, for instance, that was improper? Or were you, did one of the jurors report that he had gone to the scene of the crime and testified to what he had seen? This is extrinsic stuff. Yes. Whereas at the moment, you now go bring into, did someone say anything about problems with following the rules, such as don't hold them against the defendant that he didn't testify? That currently isn't the subject of inquiry that can be pursued. No, but my point is... The ruling for you would change that. It would, well, I'll agree with you that it will open the door to allow for more inquiry. But my point is that currently they can inquire, because there is information that they could get from jurors, you know, to try and impeach a verdict after trial. And I don't see them doing it with that, so I don't know how much different this would be. I would say another point in response would be that, well, frankly, I don't think this happens very often. There aren't, I mean, I cite it to the vast majority in my briefs of these cases in which there are letters from. So would this be the new ineffective assistance of counsel, because you didn't talk to the jurors afterwards to demonstrate what was out there available, but you didn't find out? I hope not, because I don't want to raise that issue in every case. No, I don't think, I think the answer, though, the serious answer, though, is no, because you'd never be able to prove prejudice. Mr. Koeman, how often do you think a juror who's never even considered violating the law sits there thinking, gee, if I were accused and I didn't do it, I would absolutely take the stand and tell the truth about what happened? Nine out of ten, a lot. I think that's human nature. So how's that different than what we're dealing with here? Even though it's human nature, you're not allowed to do it. No, no, you're not allowed to say it, apparently. You could be sitting there thinking it, but if someone actually articulates it, that crosses the line. Well, yeah, I think so. I mean, that's the, I don't know, and the reason, I mean. But what about then the careful defense lawyer who asks questions, did anyone say such a thing like that? No. But were you thinking it? Well, you know I did. Is that structural error? What's the situation there? Is that juror writing? Exactly. We're talking to one of the jurors who returned a guilty verdict in a case where the defendant didn't testify. And that juror then writes an affidavit that says, I held it against him. He's been interrogated about it. And he said, we put up an affidavit to that effect, that this is what you were thinking, even though you didn't say it and none of your other fellow jurors said it. I think you're, again, if the affidavit says, I held it against him, then we have evidence of. Well, I mean, they've been thinking of bad thoughts. Justice Polk just pointed out that you conceded, probably wisely, the majority of jurors may be thinking. So that's a do-over? That's structural error? If the case is reversed, remanded, let's do it again. Well, it depends on what the affidavit says. I'm not trying to. The affidavit says, yeah, I thought that. If I held it against him, because he failed to testify, I thought that I convicted, then I'd say yes. Because I don't think there's any other way to square. This is a tough issue, I think. I don't think there's any other way to square it. Well, I think an evidentiary hearing, in this case, is a good way. But I don't think there's any other way to square it than, I mean, essentially. What about the I don't believe farmers idea? But that wasn't articulated either. You know, the guy's a farmer. Yeah, did farmer defense witnesses? Well, I was thinking I really don't believe farmers. Did you say it? No. Is that a structural error? If the affidavit says I convicted him because he's a farmer and I think farmers are liars? I don't know that's ever going to say I convicted him because he's a farmer. I just think farmers are liars. I realized that during the liberations. I thought of it. I don't think that's analogous to what we have here before this court. I think this is a lot stronger. I think you could make an argument in that case. But I think that there's certainly an argument that I think the state could make that that's a lot closer to method, motive, or process. Your time's up. You get a chance to address this. Okay. Thanks, Your Honor. Thank you. Mr. McNeil, on behalf of the people. Thank you. May I please proceed? Counsel. Counsel. It should first be noted that the defendant concedes that both of these issues are forfeited. And as I explained in my brief, and as I'll explain again, the trial court didn't err in their ruling or failing to have an evidentiary hearing. So relaxation of those forfeiture rules based on plain error doesn't apply here. The case of People v. Nitz is directly on point with the present case. There were attempts to distinguish it, but that doesn't change the fact that the Nitz court held a juror's post-verdict allegations of other jurors holding the defendant's failure to testify against him is inadmissible as it concerns the jury's motive, method, or process of deliberation. Let me ask you a question about plain error. When was the defendant supposed to raise this issue? Well, post-trial motion, I think the... Okay, failed to file a post-trial motion. I think he did file a post-trial motion, if I remember correctly, but the letters to the court were before that. If I'm remembering the record correctly. He certainly doesn't have to object during a trial. No. Because he doesn't know anything. Correct. I could be wrong on the dates, but I think that's what the record indicates. Again, Nitz held that allegations like this are inadmissible. Nitz court did not talk about whether it was structural error or not, but the point still holds that they did hold evidence like this is inadmissible because it solely concerns the jury's motive, method, or process of deliberation. Also because this kind of allegation is not subject to extraneous proof. Like Justice Cook was talking about, that seems to be a requirement in allegations, post-verdict allegations such as this. In fact, the Nitz court stated, those instances in which it is attempted to prove by a juror's testimony or affidavit the motive, method, or process by which the jury reached its verdict, these, almost without exception, have been held inadmissible. The exceptions that they're talking about are the ones that are subject to extraneous proof. In this case, that isn't the case. The appellate court in Nitz also noted an important fact about allegations such as these, which I think is very important, especially with the Rule 431B. As the panel I'm sure knows, it's been a hot-button issue lately. The Nitz appellate court stated, hopefully during deliberations when a juror points out that the defendant failed to testify, the comment upsets another juror who promptly points out the judge's instruction not to consider that fact. In any event, we will not invite a massive attack on the sanctity of the verdicts by allowing the use of comments made during jury deliberations to suggest that jurors did not perform their duty to follow the law or otherwise shirk some commitment to legal principle made during court years. Such an exception would engulf the rule. The rule they're talking about, of course, is 431B, which in this case the trial court properly questioned the jurors on Rule 431B and all jurors answered affirmatively that they accepted and would follow all those principles, one of the principles being that the defendant's failure to testify cannot be held against him. Again, it would engulf that rule. Rule 431B is in place to ensure that the defendant is tried in front of an impartial, unbiased jury. As the appellate court knows, it has teeth. A lot of times if the trial court doesn't even follow the exact language of Rule 431B, it's held to be plain error. In this case, there's not even an argument from the defendant that Rule 431B wasn't followed. So the letters in this case, pursuant to NITS, are inadmissible evidence to demonstrate juror bias because they solely concern the jury's motive, method, and process of deliberation and they were not subject to extraneous proof. So the trial court did not err in disregarding those letters, denying defense motion, and failing to hold an evidentiary hearing. Assuming that the evidence was admissible, the trial court still did not err in failing to hold an evidentiary hearing. In that case, a defendant bears the burden to introduce and offer specific, detailed and non-conjectural evidence to support the allegations of jury bias to require a post-trial evidentiary hearing. Here, the defendant argued that the second letter alleged that the defendant's failure to testify against him was held against him by certain jurors and that this was non-conjectural evidence. However, this evidence is actually based on the conjecture of the juror who wrote that very letter. As explained, all the jurors in this case stated they accepted and would follow the Rule 431B principles. The defendant does not dispute this. One of those principles, of course, again, is the defendant's failure to testify cannot be held against him. So the juror in writing that letter conjectured that the jurors who made those comments ultimately made their decision a defendant's guilt based on a rejection of the Rule 431B principles that they said they accepted and would follow. And as the NITS Court found, there is a presumption that those jurors who affirm that they will follow and accept the Rule 431B principles actually do follow and accept the Rule 431B principles. The letter in this case wasn't sufficiently specific either. The requirements are specific, detailed and non-conjectural evidence. The letter wasn't sufficiently specific. The letter didn't specify which jurors held the defendant's failure to testify against him and the letters didn't specify whether those jurors' ultimate decision of guilt was based on a rejection of the 431B principles. Well, if you need to go into more detail, why don't you have an evidentiary hearing? Because the evidence was not specific or conjectural enough to warrant or require an evidentiary hearing. You say there's not enough evidence in the affidavits. Why don't you have an evidentiary hearing? Because, again, the letters were based solely on the jury's motive, method or process. I think if they only required some allegation that there would be an insolent and evidentiary hearing in every guilty finding, in every guilty defendant's conviction. So, again, the letter wasn't sufficiently specific. In fact, the juror who wrote the letter gives a valid reason for finding the defendant guilty. Right after making the allegation that some jurors held the defendant's failure to testify against him, the bulk of the discussion in the jury room consisted of a rehash of the testimony and a disultery exchange of overall impressions of the credibility of the witnesses, with the consensus being that the defendant was guilty simply because the victim was the more credible witness. So this quote suggests that the jurors actually found the defendant guilty based on credible testimony of the victim,  So, because the evidence in the juror's letter wasn't sufficiently specific, detailed, and non-conjectural, the trial court didn't err in failing to hold an evidentiary hearing, the defendant wasn't denied his due process rights. And, of course, this is even assuming that that evidence was admissible, which, clearly, pursuant to Pupil v. Nitz, that evidence isn't admissible because it deals solely with the motive, method, or process by which the jury reached its verdict, and it wasn't subject to extraneous proof. Can you imagine any situation where comments were made during jury deliberations that would result in a new trial? Yes. I think the appellate defender cited a few cases where there's extraneous proof, whether it be a letter that showed the juror knows the state's attorney, whether it be an application to the state's attorney's office, there's some piece of, like you said, outside evidence that supports the allegations of jurors. Well, what if a couple of jurors were talking to each other and said, This defendant is a black guy. I would never vote not guilty for a black guy. Again, hopefully, like the appellate court stated, they've been instructed. Not only have they been instructed, they've been questioned to make sure that the jury is going to be unbiased and impartial, and the Rule 431B principles are supposed to ensure that, to allow just allegations afterwards would pretty much render Rule 431B useless. There has to be a presumption that the jury is unbiased and impartial. Okay. Thank you, counsel. Mr. Dockholman, any rebuttal, sir? Mr. Dockholman, before you get started, I want to ask you a question. Sure. You talked about an evidentiary hearing and how that would at least help your client put forth some evidence. What would that hearing consist of, calling the jurors and questioning them about whether they held it against the defendant that he didn't testify? I would imagine so. I would imagine it would start with the letter writer and proceed on from there. I don't know how else it would go. I think that would be the evidence that you would need to look at. And I would imagine if they called the remaining 11 jurors and they say, no, I never said that. So we're going to cross-examine the jurors and ask them if they followed their oath? In a broad sense, I guess the answer would be yes. And I certainly understand this court's concerns with this issue. I think this is a tough issue. The reason I asked for argument in this case is because I feel like it is a tough issue, but what we're left with here is if we follow these rules, like let's say the nets that are in place and there's no evidentiary hearing, well, we're left with evidence of a structural error and we're actively ignoring it. Where did the phrase structural error come from in this context, from Thompson and Glassberg talking about Rule 431? That's where I point to specifically, yes. Was that necessary for the 431 jurisprudence? In those two cases? I thought they just said, you know, 431 wasn't complied with here. It's kind of a flight to rhetorical fancy by the Supreme Court to throw in that, yeah, this is biased and structural error and all that stuff. Well, those are your words, not mine. Which they've since backed off of. Now we apparently have lots of harmless error in this structural error context, don't we? Well, we have harmless error not in structural error context. Well, you're guarding 431 violations as opposed to the structural errors. 431 violations are not structural errors. Juror bias is a structural error. They've not backed down from saying juror bias is a structural error. That was the dicta in those cases, and I don't think they've backed down from those. So, I mean, I called it dicta. I agree with you. But juror bias based upon structural error is because 431 wasn't complied with. Suddenly that's not such a big deal anymore. I'm not sure I follow what you mean. Well, if 431 isn't complied with, the Supreme Court has held, and lots of other courts following that lead have held, you know, essentially no blood, no harm. Yeah. Harmless error. And the reason they've held that is because there's no evidence of juror bias. Failure to comply with the rule does not mean juror bias. There could be, but it doesn't show juror bias. A letter from a juror that says other jurors held this failure to testify against him does show juror bias within that framework of 431B. And that is how they address it in those cases. What they say is we don't have any, the court didn't comply. We don't have any, you know, we don't have any evidence of juror bias. Yeah, your fundamental position is this was changed by the 431B cases in which the structural error term appears. I think their analysis would be different post-Glasper and Thompson. That's my position on those cases. I would also say if the state of the law is that we ignore this, then you have a right to an unbiased jury, a fundamental right to an unbiased jury, only as long as you find out about bias prior to the announcement of the verdict. And again, I just don't, I see that as a fundamental problem there. If this same exact proposition were to come to the trial court's attention during trial, and the trial court said, I absolutely refuse to acknowledge this. How would it come up? There are plenty of cases where jurors write letters to the trial court during the course of trial. This juror said this, or this juror checked his cell phone, or this juror did this. The juror said, I'm not going to believe the defendant if he testifies? Well, he said it after trial. He could send out a note during deliberations. I don't think that's an unreasonable stretch. I mean, there's a Supreme Court case where they had a juror who was a, she kept, I'm not going to say tattling, but she kept telling on a juror who was doing things that she felt were improper. And the issue was not, well, should the trial court just have ignored it? It was, did the trial court handle it properly? And I think that just because we're finding out about it after trial, I understand the court's concerns about the finality of verdict. I don't disagree with any of that. But if you find out about it during trial, it's a big deal and we have to deal with it. But if you find out about it after trial, we're just going to actively ignore it. I think that's a problem with that position. And that's why I think at least an evidentiary hearing would help. Then it's not, if there are any questions about whether this actually occurred, it can be resolved during that hearing. One final point I'd like to make is that plenty of courts have reversed, including the Supreme Court, on grounds of potential prejudice alone. There's a case, Reinbold, that I cited in my brief, in which there was, the appellate court, I think it was the appellate court case, did not feel that the juror was sufficiently rehabilitated during the course of voir dire. And they felt that there was at least a sufficient chance that that juror wanted the defendant to prove his case. Now that, there was no evidence that that actually happened. The court reversed for any trial on the grounds of potential prejudice. So I think that here, when we have evidence of actual prejudice or bias after trial, the only distinction is after trial, that we can't just lump it in with method, mode, or process and ignore it. Thank you, counsel. Thank you. Thank you, sir. I'd advise him to be in recess for a few minutes.